STATE of Maine

v.

Bruce A. SOMMER.

Supreme Judicial Court of Maine.

Dec. 31, 1979.

Michael E. Povich (orally), Dist. Atty., Ellsworth, for plaintiff.

Philip R. Foster, Ellsworth (orally), for defendant.

Before McKUSICK, C. J., and POME-ROY, GODFREY, NICHOLS and GLASS-MAN, JJ.

WERNICK, Justice.

Defendant Bruce A. Sommer has appealed from a judgment of conviction entered in the Superior Court (Hancock County) on the verdict of a jury finding him guilty of having committed, on January 27, 1979, the crime of criminal threatening, in violation of 17–A M.R.S.A. § 209(1),[1] with use of a dangerous weapon.[2]

■ Defendant has entered pleas of "not guilty" and "not guilty by reason of insanity." Before trial, however, he withdrew the plea of "not guilty by reason of insanity" and chose to go to trial only on his plea of "not guilty." Defendant's pleading thus foreclosed him from making any contention at trial, or in this appeal, that he was not "criminally responsible" for his conduct pursuant to 17–A M.R.S.A. § 58(1).

Apparently acknowledging this point, defendant confines his contention in this appeal to an attack on the correctness of the adjudication that he was guilty of the crime charged. Defendant says that the evidence was inadequate to justify a jury finding beyond a reasonable doubt that he committed the crime. He maintains that the evidence is fatally deficient for having failed to prove two of the essential elements of the crime charged: (1) that defendant placed another person in fear of imminent bodily injury; (2) that even if this did happen, defendant "intentionally or knowingly" caused it to happen.

We disagree with defendant's contention and deny the appeal.

On the evidence the jury was plainly entitled to find the following facts. During the morning of January 27, 1979 defendant was at the house occupied by his mother and stepfather, and he went into the kitchen to eat breakfast with his mother, sister and brother-in-law. Defendant picked up an

---

1. This statute provides:.
 "(1) A person is guilty of criminal threatening if he intentionally or knowingly places another person in fear of imminent bodily injury."

2. The accusation that defendant committed the crime of criminal threatening with use of a dangerous weapon brought into play the provisions of 17–A M.R.S.A. § 1252(4) raising the sentencing class for the crime charged from Class D to Class C.

english muffin and using a small serrated steak knife, he cut it in half. Suddenly, defendant announced to all assembled that Mrs. Christine Sommer, who was generally thought to be his mother, was not his mother; that his real mother had been killed before he was born and he had been born in a test tube. Further stating that the Japanese had injected a foreign substance into Mrs. Sommer's breast, defendant took hold of Mrs. Sommer's blouse and held the steak knife against her throat, saying: "I will show you, I will cut off your breast." While she was thus restrained, Mrs. Sommer closed her eyes. She stated in her testimony, "I was scared, I guess." After about fifteen or twenty seconds had passed, defendant released Mrs. Sommer and left the kitchen. Mrs. Sommer hesitated for some time before calling the police because, according to her testimony, having committed defendant to a mental hospital in the spring of 1978, she thought that he was "very sick" and in need of medical attention.

On the basis of the foregoing findings the jury was justified in concluding beyond a reasonable doubt that defendant had placed another person in fear of imminent bodily injury. Adequate support for such a determination was the evidence as to the objective circumstances, together with Mrs. Sommer's testimony that when defendant was holding her with a knife against her throat and threatening to cut off her breast, she was "scared."

The evidence was also sufficient to justify a jury finding beyond a reasonable doubt that defendant acted "intentionally or knowingly" to place Mrs. Sommer in fear of imminent bodily injury. In this regard, defendant's argument is that the evidence that he had recently been committed to a mental hospital, that his mother believed he was "very sick", in combination with the testimony of the bizarre statements he made, required a rational juror to have a

reasonable doubt that defendant was acting "intentionally or knowingly" to place Mrs. Sommer in fear of imminent bodily injury. Hence, argues defendant, the presiding Justice should have ordered entry of the judgment of acquittal defendant requested at the conclusion of all the evidence.

Defendant's contention fails. *State v. Burnham*, Me., 406 A.2d 889 (1979), recently decided by us, is most enlightening regarding the issue under consideration. *Burnham* holds that Section 58(1–A) [3]

> "allows admission of any evidence, including evidence of mental abnormality, which raises a reasonable doubt as to whether the defendant had the culpable mental state . . ." (406 A.2d at 895)

that is made an essential element of the crime charged. *Burnham* also makes plain:

> "[t]his rule applies generally, whether or not the defense of lack of criminal responsibility as a result of mental disease or defect has been raised . . . ." Id. at 895.

Beyond these holdings, *Burnham* is important for present purposes because of what it says concerning the evidence, purporting to show abnormal condition of mind that can *generate* a reasonable doubt of the existence of the "culpable" state of mind made an essential element of the crime charged. *Burnham* states categorically:

> "if the defendant wishes to introduce psychiatric testimony . . . in a trial on the question of guilt or innocence alone where no plea of not guilty by reason of insanity has been entered, he should be required to make an offer of proof out of the presence of the jury, that the Court may ascertain that the proffered evidence *goes to negate* the 'culpable state of mind' . . . which is an essential element of the crime. *Only if the evidence is relevant* to a culpable state of mind and otherwise comports with the rules of evidence must it be admitted

---

3. 17–A M.R.S.A. § 58(1–A) provides:

"In a prosecution for a crime which may be committed intentionally, knowingly or recklessly, where such culpable state of mind is a necessary element, the existence of a reasonable doubt as to such state of mind may be established by evidence of an abnormal condition of mind."

. . . . It is important to note that not all evidence relevant to proof of the affirmative defense of lack of criminal responsibility would be relevant and admissible . . . [for the purpose of negating the 'culpable state of mind' made an essential element of the crime charged]." Id. at 895–896. (emphasis added)

 Since *Burnham* had not yet been decided when the present case was tried, the presiding Justice did not have the benefit of its procedural clarification that a presiding Justice should determine outside the presence of the jury whether proffered evidence as to an abnormal condition of mind should be admitted as having relevance to a culpable state of mind that is an essential element of the crime charged, insofar as such proffered evidence can be deemed capable of raising a reasonable doubt as to such element. Even though no such evaluation was made at trial, this Court is now called upon, in effect, to make that evaluation. In this appeal defendant's contention is that the matters in evidence indicating his abnormal condition of mind must be taken to be so cogent as to require a rational juror to entertain a reasonable doubt that defendant acted "intentionally or knowingly" to place Mrs. Sommer in fear of imminent bodily injury. On this basis defendant argues to us that his motion for judgment of acquittal was erroneously denied by the presiding Justice. However, if this Court's evaluation of the evidence leads to the conclusion that, far from having the conclusive effect defendant attributes to it, the purported evidence as to defendant's abnormal condition of mind was really not relevant on the question of whether defendant acted with the culpable state of mind made an essential element of the crime, because that evidence did not rise to the level of being adequate even to generate a reasonable doubt in the mind of a rational juror as to the existence of that culpable state of mind, defendant's contention in this regard must be rejected.

We so decide. Although particular statements made by defendant had a ring of irrationality in some respects, the critical point is that the threat uttered by defendant made plain his awareness, *as reality*, that he was using a knife against an object he knew was the breast of a woman. Thus, there is no rational basis, here, for a juror to entertain a doubt that defendant, in acting as he did toward Mrs. Sommer, may have been under a delusion that he would still be slicing the english muffin on which he had already used the knife. Moreover, in this case, unlike the situation in *Burnham*, defendant presented no evidence by psychiatrists, physicians, or psychologists as to the particular nature of defendant's mental illness and how it would affect his cognitional and volitional powers. Further, that lay persons, such as defendant's mother, Mrs. Sommer, or his sister, gave testimony that they thought defendant was "very sick" or "did not realize what he was doing", simply on the basis of their "past experiences"—without any amplification of the factual details of those past experiences or what they knew (if they knew) to be the nature of defendant's illness, or how they had observed his illness to manifest itself in past behavior tending to show some impairment of his cognitional or volitional faculties—cannot be deemed evidence legally sufficient to raise a reasonable doubt that on the particular occasion at issue defendant had acted "intentionally or knowingly" to place Mrs. Sommer in fear of imminent bodily injury. Similarly, the bare fact that defendant had been civilly committed to a mental institution some eight or nine months before the incident in question, without any testimony clarifying the nature of his mental illness or explaining the circumstances of his commitment, cannot be deemed to be legally sufficient to raise a reasonable doubt as to defendant's having acted with the culpable state of mind at issue.

In short, all of the foregoing evidence lacked legal sufficiency to generate a reasonable doubt as to the requisite culpable state of mind because it left indefinite and speculative the nature of the relationship, if any, between an indicated abnormal condition of mind and defendant's ability to act

"intentionally or knowingly" as to consequences of his conduct. With the evidence on this critical point thus conjectural and speculative, a juror would have no *rational* basis on which to entertain a doubt that defendant acted "intentionally or knowingly" to place Mrs. Sommer in fear of imminent bodily injury; that is, on such evidence a rational juror would lack ground to have a doubt that could be a *reasonable* doubt.[4]

The entry is:

Appeal denied.

Judgment of conviction affirmed.

ARCHIBALD, J., did not sit.

GODFREY, Justice, concurring in the result:

I agree with the rest of the Court that the trial justice did not err in denying the defendant's motion to acquit.

Defendant did not ask for an instruction relating to his capability of having the knowledge or intention requisite for commission of the crime of terrorizing, and he offered no objection to, or amendment of, the trial justice's instructions to the jury. Those instructions set forth correctly and with some emphasis the State's burden of proving beyond a reasonable doubt that the defendant acted intentionally or knowingly. Although the instructions did not highlight any issue of the defendant's capability of having the requisite mental state, they cannot be said, in the absence of objection or request by counsel, to have contained any "obvious error or defects" within the meaning of Rule 52(b), M.R.Crim.P. Certainly, on the instructions given, the jury could have found defendant guilty only after considering whether he had the necessary knowledge or intention and deciding that he did.

4. Although defense counsel's argument to the presiding Justice in support of defendant's motion for judgment of acquittal referred to the evidence indicating that defendant was mentally ill as having bearing on whether defendant had the requisite culpable state of mind, defense counsel made no request for the presiding Justice to instruct the jury that the evidence of defendant's abnormal condition of mind could be taken into account in the jury's evaluation

With the case in such a posture, it is not necessary to decide on this appeal whether any issue of defendant's capability of having the requisite knowledge or intent was generated at the trial below. There having been no error, the judgment should be affirmed.

GLASSMAN, Justice, dissenting.

I respectfully dissent.

The presiding Justice properly denied the defendant's motion for judgment of acquittal. There was sufficient evidence to permit the jury to find beyond a reasonable doubt that the defendant placed another person in fear of imminent bodily injury and that he acted either intentionally or knowingly. The evidence as to the defendant's abnormal condition of the mind was not such as to require a rational trier of fact to have a reasonable doubt as to whether the defendant acted intentionally or knowingly. My disagreement with the majority is that I believe there was sufficient evidence of defendant's abnormal condition of mind to require that the jury be instructed that it could consider such evidence in determining whether the State had proven beyond a reasonable doubt that the defendant had acted intentionally or knowingly.

17–A M.R.S.A. § 58(1–A) provides:

In a prosecution for a crime which may be committed intentionally, knowingly or recklessly, where such culpable state of mind is a necessary element, the existence of a reasonable doubt as to such state of mind may be established by evidence of an abnormal condition of mind.

During the direct examination of the victim, the defendant's mother, she testified as follows:

of whether defendant acted "intentionally or knowingly" to place Mrs. Sommer in fear of imminent bodily injury. Moreover, defense counsel made no objection to the charge given by the presiding Justice which made no mention of such a potential relationship.

In any event, in view of our conclusion that the evidence was insufficient even to generate that issue, no such instruction by the presiding Justice was warranted.

A: He started talking about his own mother was killed, because he was in a test tube, and I was not his real mother and didn't I agree with him, and I said, no, I was his mother.

Q: Did he then say something else?

A: He said something about I didn't know what the Japanese had injected into my breast and I said they had not injected anything into my breast, and he said, well, they had. And he was going to have to prove it to me and something about the Bible, he came out with the Bible in his hand, that it was all in the Bible and he walked around in back of my chair with the knife in his hand and I just shut my eyes and sat there.

Later in her direct examination when asked why she didn't call the police immediately the victim testified:

A: Because I wanted to get in touch with my lawyer when Bruce wasn't right handy, because I wanted to get him committed to a mental hospital because I thought he was very sick.

Q: Had your son been committed to a mental hospital before by you?

A: Yes.

Q: When was that?

A: Nineteen seventy-eight.

Q: In the spring?

A: In the spring of nineteen seventy-eight.

Later in her cross-examination she stated:

Well, I was—I don't know what I felt. I really don't, deep in my heart, I don't think I felt he would really harm me, but I also felt there was—that he was sick and when people are not thinking correctly—.

Joan Brussard, the defendant's sister and a witness to the incident, testified:

Well, I realize that Bruce was not in his right mind, from past experiences, and Bruce did not realize what he was doing so that is why I was afraid that anything might happen.

In order to prove its case, the State must have proved that the defendant intentionally or knowingly placed another person in fear of imminent bodily injury. 17–A M.R. S.A. § 209(1). It was not sufficient for the State to prove merely that the physical acts were performed as a result of an exercise of the defendant's volition. The State had to show that the acts were performed either with the "conscious object to cause" his victim to have fear of imminent bodily injury, id., § 10(1)(A), or with an awareness that it was "practically certain that his conduct" would cause his victim to have fear of imminent bodily injury. Id., § 10(2)(A). Proof of either of those culpable mental states was an essential element of the State's case. 17–A M.R.S.A. § 11(1). The State was constitutionally required to prove one of those mental states beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); see Mullaney v. Wilbur, 421 U.S. 684, 699–700, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

In the ordinary criminal case, as in this case, the State must rely upon circumstantial evidence to prove the defendant's mental state. Rarely is there direct evidence of the mental state of a defendant at the time of the commission of the prohibited act. The jury is, quite properly, permitted to infer the requisite mental state by the objective manifestation of the defendant's state of mind as reflected in his conduct and all of the surrounding circumstances. When the surrounding circumstances, including the defendant's history of mental illness, suggest that at the time of the prohibited acts the defendant may have been suffering from an abnormal condition of the mind, the jury may decline to draw the inference that he acted intentionally or knowingly. The defendant's physical acts are no more indicative of his state of mind than are the opinions of those who knew him that at the time he "did not realize what he was doing." Indeed, even disregarding the impressions of the witnesses, the defendant's irrational statements were sufficient evidence of abnormal condition of mind to require jury consideration. To suggest that the defendant must prove the

existence of an abnormal condition of the mind by expert testimony or by a particular quantum of proof is to shift the burden of persuasion in a manner previously held unconstitutional. *See Mullaney v. Wilbur, supra,* 421 U.S. at 703–04, 95 S.Ct. 1881. It must be remembered that we deal with proof of an essential element of the offense, not with the insanity defense where the burden may be placed on the defendant. *See Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The jury must consider *all of the circumstances* in evaluating whether the State has met its burden of proving the defendant's culpable state of mind beyond a reasonable doubt.

The jury should have been instructed that in determining whether the State had proven the culpable state of mind beyond a reasonable doubt it might consider evidence that at the time of the commission of the prohibited acts the defendant was suffering from an abnormal condition of the mind. Defendant neither requested such an instruction nor objected to the failure of the court to give such an instruction. *See* M.R. Crim.P. 30(b). The failure of the court to so instruct must be evaluated to determine whether it is "obvious error affecting substantial rights." M.R.Crim.P. 52(b).[1] I conclude that standard was met in this case and reach this conclusion for two reasons.

First, the court clearly indicated its intention to submit this issue to the jury. In ruling upon the defendant's motion for judgment of acquittal, the court stated:

> Well, the bottom line is I am going to deny your motion. I appreciate the fact that there is some evidence there that may suggest that he might not have been functioning in a normal pattern of behavior at the time. I think it is for the jury or the fact finder to make a judgment as to whether or not that at that time he possessed sufficient amount of control of himself to either form the necessary intent, or that he could understand and had knowledge of the consequences of his act. I think that is for the jury to determine.

The presiding Justice's recognition that the issue had been generated and was for the jury to determine was an implicit statement that he would instruct on the issue.

Second, and more significant, the failure to instruct the jury on the appropriate use of the evidence relating to the defendant's abnormal condition of mind deprived the defendant of a substantial right—the right to have the jury consider *all of the evidence* relating to his state of mind at the time of the commission of the prohibited acts. For these reasons, the judgment should be set aside and the case remanded to the Superior Court for a new trial.

---

1. This Court has traditionally applied the standard of "manifest error." *See, e. g., State v. Thibodeau,* Me., 353 A.2d 595, 605 (1976); *State v. Northup,* Me., 318 A.2d 489, 499 (1974). That concept does not differ from the standard enunciated in M.R.Crim.P. 52(b). *See generally* 3 C. Wright, Federal Practice and Procedure § 856 (1969).