**STATE of Maine**

v.

**Charles W. PAGE.**

Supreme Judicial Court of Maine.
Argued April 30, 1980.
Decided June 11, 1980.

---

Charles K. Leadbetter, Janet Mills, Michael G. Messerschmidt (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Paine & Lynch, Martha J. Harris (orally), Errol K. Paine, Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY and GLASSMAN, JJ.

WERNICK, Justice.

After a jury-waived trial in the Superior Court (Penobscot County) defendant Charles W. Page was found guilty of the crime of murder, as here charged against him in accordance with the definition particularly set forth in 17–A M.R.S.A. § 201(1)(A).[1] Defendant has appealed from the judgment of conviction.

The appeal presents two questions for decision: (1) whether the evidence was sufficient to support the conclusion of the presiding Justice that the State had met its burden of proving beyond a reasonable doubt the essential element of murder as that crime is here charged, that defendant had acted "intentionally or knowingly" with respect to the death of the victim; and (2) whether the evidence as the defendant's

---

[1] That definition is:

"§ 201. Murder

"1. A person is guilty of murder if:

"A. He intentionally or knowingly causes the death of another human being;"

lack of criminal responsibility (17–A M.R. S.A. § 58) was so cogent that it required, as a matter of law, the conclusion that defendant had satisfied his burden of proving by a preponderance of the evidence that he lacked criminal responsibility.

We deny the appeal and affirm the judgment of conviction.

The indictment charged in one count that defendant had raped, and in a second count that defendant had murdered, Diane Titus. To each count defendant pleaded not guilty and not guilty by reason of mental disease or defect. Various requests made by defendant before trial for psychiatric, psychological and neurological examinations were all granted.

At the conclusion of the State's presentation of its case at trial, defendant's motion for judgment of acquittal on the count charging rape was granted and defendant was acquitted of that charge. The trial went forward on the murder count of the indictment.

The evidence disclosed that on April 11, 1978 Diane Titus' husband left their home on Winter Street in Dexter at approximately 6:50 a. m. Diane stayed at home with the Tituses' two young children. At about 8:05 a. m., the Tituses' next door neighbor came to the Titus home, having been summoned by the Tituses' five year old daughter, and found Diane dead. It was later ascertained that Diane had sustained fifty-five stabbing and slashing knife wounds and that she had died from excessive loss of blood.

Several witnesses from the community testified as to events prior to Diane's death. Defendant was seen entering a store in Dexter sometime between 6:15 and 6:30 a. m., on April 11th. He was also seen driving a green Ford Pinto station wagon borrowed from Dexter Motor Sales. A green car like the Ford Pinto station wagon operated by defendant was observed at about 7:30 a. m. parked in the driveway of the Titus home. Shortly before 8:00 a. m., defendant was seen operating a vehicle that emerged from Winter Street.

Also in evidence was a police detective's testimony concerning defendant's statements to him made late in the afternoon of April 11th and the next day. Defendant had said that on April 11, he left his work early, at about 4:30 a. m. Having taken a valium pill and another pill for his stomach, he proceeded to drive around Dexter, gave his son a ride, and then went to the Titus home. He put on work gloves before he entered the house, knowing that "he was going to do something, but he wasn't sure what." Once he was inside the house, defendant hit Diane Titus several times and knocked her down. He began feeling angry, even "mad" and his vision became blurred, and he saw "gray-black . . . sort of going blind." He started to tremble, and then he began stabbing. Sometime during all of this, according to defendant, he engaged in sexual intercourse with Diane Titus.

Both the prosecution and the defense introduced abundant evidence pertaining to whether or not defendant's condition of mind was abnormal. Three psychologists and three psychiatrists testified about clinical tests they had made and their evaluations.

At the close of all of the evidence defendant moved for a judgment of acquittal under the murder count of the indictment. The presiding Justice denied the motion and then adjudged defendant guilty of murder as charged. Subsequently, defendant filed a "Motion for Judgment N.O.V. or, in the Alternative, for a New Trial." The Justice denied this motion and sentenced defendant to imprisonment for life.

*1.*

█ The murder count of the indictment charged that defendant "did intentionally or knowingly cause the death of Diane R. Titus." The State therefore had the burden to prove beyond a reasonable doubt that defendant acted with the culpable state of mind "intentionally" or "knowingly", as

defined in 17–A M.R.S.A. § 10,[2] with respect to the death of Diane Titus.

■ To lay groundwork to support his contention that the State failed as a matter of law to meet this burden, defendant offers the preliminary argument that the presiding Justice omitted to make manifest that he was aware of, or had followed, the directive of 17–A M.R.S.A. § 58(1–A) that "evidence of an abnormal condition of mind" is to be considered by the fact-finder not only on the question of defendant's "criminal responsibility" but also on the issue whether defendant is to be acquitted of a crime charged against him that involves a culpable state of mind as an essential element.

We reject this argument by defendant on the ground that the record squarely refutes it. The record shows that the presiding Justice was acutely aware of Section 58(1–A) and that he therefore took pains to avoid precisely the problem defendant now seeks to create. This appears from the following direct and affirmative statement made by the presiding Justice:

> "Because of the significance of the issues that are presented, the Court has chosen to make some observations with some degree of care for the benefit of the parties, the State and the Defendant and to protect the record.
>
> "*The Court is aware that some of the evidence, much of the evidence presented in this case bears on more than just the defense of insanity and that under the terms of the criminal code that evidence must also be evaluated in terms of the elements of the substantive defense. The Court has so evaluated the evidence.*" (emphasis added)

The presiding Justice then announced his findings:

**2.** Section 10(1)(A) states:
"A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result."
Section 10(2)(A) provides:
"A person acts knowingly with respect to a result of his conduct when he is aware that it

"The Court is satisfied beyond any reasonable doubt that voluntary conduct on the part of Charles Page caused the death of Dianne Titus and that the acts of Charles Page were intentional, that is they were committed for the purpose of causing death and that he knew that the death of Dianne Titus would almost certainly result."

The findings were amply supported by the evidence of defendant's actions before, during and after the killing of Diane Titus, as well as by the statements defendant himself made after the killing.

■ Moreover, the validity of the findings is not impaired because there was expert testimony that defendant's condition of mind was abnormal. This testimony focussed on defendant's inability to control his conduct. As we clarified in *State v. Ellingwood*, Me., 409 A.2d 641, 646 (1979):
> "Inability to control one's actions does not negate the existence of a culpable mental state; rather, it serves as an excuse."

Even if we take the expert testimony to have had relevance to whether defendant had acted "intentionally or knowingly" with respect to Diane Titus' death as a result of his acts, the testimony was of such nature that, at most, it could only *permit* the fact-finder to entertain a reasonable doubt; it could not *compel* him, as a rational fact-finder, to have such a reasonable doubt. As we stressed in *Ellingwood, supra*, at 644:
> "[t]he fact-finder is not bound by the conclusions of psychiatrists who testify concerning their opinions of the mental condition of a defendant. Where the facts and assumptions underlying expert opinions are amply exposed during their testimony in the course of trial, the fact-finder is entitled to draw his own ultimate conclusions." [3]

is practically certain that his conduct will cause such a result."

**3.** This statement appears in *Ellingwood* specifically in reference to the issue of lack of criminal responsibility. The point made, however,—that the opinion testimony of experts rarely will control the fact-finder—is applicable as well to the present issue regarding the relation

■ The presiding Justice's findings, as now sustained by us, that defendant acted "intentionally or knowingly" with respect to the death of Diane Titus resulting from his conduct, negates as a matter of law that defendant could be adjudged guilty of manslaughter under 17–A M.R.S.A. § 203(1)(A). That finding excludes as a rational possibility that defendant might have acted "recklessly" or with "criminal negligence." [4] Moreover, evidence was lacking, here, that could be deemed to generate an issue of "adequate provocation" which, were it proved, would reduce murder to manslaughter under 17–A M.R.S.A. § 203(1)(B).

## 2.

■ 17–A M.R.S.A. § 58(3) provides, consistently with constitutional due process of law, that the ultimate burden is on the defendant to prove by a preponderance of the evidence that he lacks criminal responsibility within the provisions of 17–A M.R.S.A. § 58(1). *See State v. Burnham,* Me., 406 A.2d 889, 892 (1979). Despite defendant's assertions to the contrary, we conclude that the psychological and psychiatric testimony was conflicting in regard to whether defendant suffered from a "mental disease or defect" and whether he "lacked substantial capacity to conform his conduct to the requirements of the law, or . . . to appreciate the wrongfulness of his conduct." 17–A M.R.S.A. § 58(1). Similarly, the testimony of the lay witnesses was subject to varying interpretations. We there-

fore advert to the point we made in *Ellingwood,* Me., 409 A.2d 641, 646 (1979):

"Th[e] line between normal, but criminal, behavior, and abnormal behavior, excusing one of criminal responsibility, must be drawn by the ultimate fact-finder on the basis of a complex evaluation of moral, legal and medical judgments. That decision will only rarely be reversed by an appellate court [and then only] upon a strong showing that no reasonable fact-finder could conclude otherwise than that the defendant lacked criminal responsibility for his conduct."

In the case at bar the evidence plainly did not even approach a level of cogency that could require, as a matter of law, the conclusion that defendant had proved it more probable than not that he lacked criminal responsibility. We therefore hold the determination of the presiding Justice in this regard to be well within his exclusive province as fact-finder.

The entry is:

Appeal denied.

Judgment of conviction affirmed.

All concurring.

---

of an abnormal condition of mind to a culpable state of mind which is made an essential element of the crime charged against defendant.

4. 17–A M.R.S.A. § 203, "Manslaughter" provides in pertinent part:
"*1.* A person is guilty of manslaughter if he:
"*A.* Recklessly, or with criminal negligence, causes the death of another human being; or

"*B.* Causes the death of another human being under circumstances which would otherwise be murder except that the actor causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation."