STATE of Maine

v.

Jonathan MISHNE.

Supreme Judicial Court of Maine.

Argued May 5, 1980.

Decided Jan. 26, 1981.

Henry N. Berry, III, Dist. Atty., John Kugler (orally), Asst. Dist. Atty., Barbara Mantegani, Law Student, Portland, for plaintiff.

Palmer, Ames & Bumgardner, Richard C. Ames (orally), Brunswick, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

ROBERTS, Justice.

Jonathan Mishne and Kent Nichols were jointly indicted on three counts of robbery with a firearm (17–A M.R.S.A. § 651(1)(B), (C), and (E)), two counts of kidnapping (17–A M.R.S.A. § 301(1)(A)(5), and one count of theft by extortion (17–A M.R.S.A. § 355). Mishne entered a plea of not guilty by reason of insanity (17–A M.R.S.A. § 58)[1] and requested a bifurcated trial (17–A M.R.S.A. § 59).[2] In the first stage he was found guilty on all counts by a jury; in the second stage, jury waived, the presiding justice rejected his insanity defense.

Mishne raises three issues on appeal: first, whether the absence of codefendant Nichols following a plea of guilty was so prejudicial that the presiding justice's denial of his motion for a mistrial amounted to an abuse of discretion; second, whether the presiding justice improperly excluded from the first phase of the trial evidence which Mishne asserts would show mental incapaci-

---

1. 17–A M.R.S.A. § 58 reads:

1. An accused is not criminally responsible if, at the time of the criminal conduct, as a result of mental disease or defect, he either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct.

1–A. In a prosecution for a crime which may be committed intentionally, knowingly or recklessly, where such culpable state of mind is a necessary element, the existence of a reasonable doubt as to such state of mind may be established by evidence of an abnormal condition of mind.

2. As used in this section, "mental disease or defect" means any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs the processes and capacity of a person to control his actions. An abnormality manifested only by repeated criminal conduct or excessive use of alcohol, drugs or similar substances, in and of itself, does not constitute a "mental disease or defect."

3. The defendant shall have the burden of proving, by a preponderance of the evidence, that he lacks criminal responsibility as described in subsection 1.

2. 17–A M.R.S.A. § 59 reads as follows:

1. When the defendant enters a plea of not guilty together with a plea of not guilty by reason of insanity, he shall also elect whether the trial shall be in 2 stages as provided for in this section, or a unitary trial in which both the issues of guilt and of insanity are submitted simultaneously to the jury. At the defendant's election, the jury shall be informed that the 2 pleas have been made and that the trial will be in 2 stages.

2. If a two-stage trial is elected by the defendant, there shall be a separation of the issue of guilt from the issue of insanity in the following manner.

A. The issue of guilt shall be tried first and the issue of insanity tried only if the jury returns a verdict of guilty. If the jury returns a verdict of not guilty, the proceedings shall terminate.

B. Evidence of mental disease or defect, as defined in section 58, subsection 2, shall not be admissible in the guilt or innocence phase of the trial for the purpose of establishing the defense of a lack of criminal responsibility, as defined in section 58, subsection 1. Such evidence shall be admissible for that purpose only in the 2nd phase following a verdict of guilty.

3. The issue of insanity shall be tried before the same jury as tried the issue of guilt. Alternate jurors who were present during the first phase of the trial but who did not participate in the deliberations and verdict thereof may be substituted for jurors who did participate. The defendant may, however, elect to have the issue of insanity tried by the court without a jury.

4. If the jury in the first phase returns a guilty verdict, the trial shall proceed to the 2nd phase. The defendant and the State may rely upon evidence admitted during the first phase or they may recall witnesses. Any evidence relevant to the defendant's responsibility, or lack thereof, under section 58, is admissible. The order of proof shall reflect that the defendant has the burden of establishing his lack of responsibility. The jury shall return a verdict that the defendant is responsible, or not guilty by reason of mental disease or defect excluding responsibility. If the defendant is found responsible, the court shall sentence him according to law.

5. This section shall not apply to cases tried before the court without a jury.

ty due to the effect of withdrawal resulting from drug addiction; third, whether the finding on Mishne's insanity defense was against the weight of the evidence. We affirm the judgments of conviction.

### Facts

Mishne has a long history of drug addiction, which he described at length at trial. He came to Maine to enter the Elan program, where he successfully withdrew from addiction. He then entered the University of Southern Maine at Gorham. After 21 months without drugs, he broke his hip. He testified that while undergoing surgery, he was treated with Demerol, which caused him to become readdicted.

On March 13, 1979, Mishne and Nichols entered the Brunswick office of Dr. Elihu York, M.D., where they held a gun on several staff persons and the doctor, while they demanded and obtained hypodermic apparatus and drugs. They could not obtain the drugs they wanted, so Mishne and Dr. York drove to a pharmacy, where the doctor filled a prescription for Demerol. The next day, Mishne and Nichols threatened Dr. York over the phone and demanded more Demerol. They were arrested by Brunswick police after they had picked up the drugs at a prearranged place.

At trial, Mishne denied having any memory of the incident at Dr. York's office, and claimed to have had other blackouts during withdrawal.

### I. *Motion for a Mistrial*

Mishne's counsel filed two separate pretrial motions to sever. Both motions asserted that Mishne would be prejudiced by joinder with defendant Nichols, particularly if Nichols testified or his statements were introduced. The second motion added that Mishne was not ready to produce his medical witnesses for trial on the assigned date, and severance was required in order to allow Mishne to obtain a continuance, since Nichols had been unable to make bail. Both the motion for severance and the motion for a continuance were denied, although the presiding justice said he would grant the motion to continue if Nichols were not in jail.

When the trial began, Mishne's counsel renewed, and the Court denied, his motion for a continuance. On the second day of trial, Nichols pleaded guilty. Mishne's counsel moved for a mistrial on the ground that codefendant Nichols' guilty plea made a fair trial impossible. He reminded the Court that if it had not been for Nichols being in custody, the court would have granted Mishne's motion for a continuance. The Court noted that the State did not plan to call Nichols as a witness and that the defense had indicated that the only defenses was either lack of the requisite culpable mental state, or the defense of insanity. Since the defendant would not try to generate a reasonable doubt that Mishne had performed the acts described by the State's witnesses, the presiding justice found that there was no danger of prejudice from the absence of Nichols.

Mishne does not attack directly the denial of his pretrial motions for severance. The issue he raises on appeal is the denial of his motion for a mistrial after Nichols' guilty plea. He argues, however, that the alleged prejudice would never have occurred if his pretrial motions had been granted. The decision to order a severance is within the sound discretion of the presiding justice and his ruling will not be reversed on appeal absent an abuse of discretion. *State v. Smith*, Me., 415 A.2d 553, 556 (1980). Similarly, a motion for a mistrial is addressed to the presiding justice's discretion, and will be reviewed only for abuse. *State v. Saulle*, Me., 414 A.2d 897, 899 (1980); *State v. Edwards*, Me., 412 A.2d 983, 985 (1980). The presiding justice here stated explicitly his grounds for denying the motion: that the State was not planning to call Nichols as a witness, that he would instruct the jury to disregard Nichols' absence, and that Mishne's defense went only to the issue of intent. These grounds demonstrate the absence of any prejudice to the defendant and, hence, the absence of any abuse of discretion in the denial of his motion for a mistrial.

## II. *Exclusion of Expert Testimony in the First Phase of Trial*

Mishne's trial took place on July 30–31, 1979, before this Court's decisions in *State v. Burnham*, Me., 406 A.2d 889 (1979), and *State v. Sommer*, Me., 409 A.2d 666 (1979). Mishne argues on appeal that the presiding justice did not apply the correct standard in excluding expert testimony concerning drug withdrawal offered by the defense in the first phase of the trial as evidence of either "abnormal conditions of mind" under 17–A M.R.S.A. § 58(1–A) or "intoxication" under 17–A M.R.S.A. § 58–A.

*Burnham* held that under § 58(1–A) psychiatric evidence may be "relevant to the question of whether the defendant is guilty of the crime, when the culpable state of mind ... is an element of the crime charged." 406 A.2d at 894. *Sommer, supra*, illustrates the point that evidence that a defendant may have been suffering from mental or emotional difficulties does not necessarily suggest that defendant's conduct was not intentional or knowing, as those terms are defined in the criminal code. 409 A.2d at 668–670. *See also State v. Bridges*, Me., 413 A.2d 937, 941–942 (1980).

On the first day of trial, the presiding justice asked for argument on whether "withdrawal" could be considered either "intoxication" or "abnormal condition of mind." He stated that if withdrawal was not intoxication, or being "under the influence of drugs," then it must be "in the area of mental diseases," in which case "it has nothing to do with this part of the case." The next day the presiding justice ruled that drug withdrawal is not intoxication, either voluntary or involuntary. Defense objected, based on the definition of intoxication in § 58–A(3)(A). The presiding justice clarified his ruling, stating that the defendant's "great desire for drugs ... in a withdrawal stage" would not be admissible to generate an issue of lack of intent or to generate an intoxication defense.

The following exchange then occurred:

MR. AMES: I'm still unclear, I have witnesses that are prepared to testify as to withdrawal, the compulsioness [*sic*] of an individual ... that is a drug addict that is in the process of withdrawal, and I've got witnesses to testify that he was in fact withdrawing—medical witnesses, psychiatric witnesses, that he was in fact withdrawing the day after, and I have witnesses that will testify to basically the same observations. The doctor decided it was withdrawal. There are a lot of witnesses, and I don't know which ones—

THE COURT: I probably would exclude every single one of them but I will allow you to put it on the record. As you say, this case is important enough, and when it goes to the Law Court, the Law Court ought to have an opportunity to evaluate every bit of evidence. This is not going to go before the jury. What you are talking about, I would allow you to put it in on voir dire to allow me to examine and determine whether I'm going to admit any part of it or exclude it.

After the defendant's own testimony, the defendant's attorney made an offer of proof, in which he described each of his medical witnesses and what they would say, without actually presenting them for voir dire. The offer included the following:

There's also Jean Vahee whom I would introduce as a drug counselor at a residential drug rehabilitation center in Portland who has been—who is the assistant head of this particular operation, and has been in the drug rehabilitation counseling business for six and a half years, and has worked extensively out of state, and in the State of Maine for this field. He would testify to the fact that sometime in late January or early February, Jonathan Mishne came there seeking Methadone, seeking treatment, specifically Methadone treatment. And he told him there were no Methadone clinics in Maine, that he would have to go to Massachusetts.

He would also, if allowed to testify, he would testify to withdrawal symptoms, drug addition, in general, the compulsion of Heroin addicts to obtain Opiates to get off on, to relieve any type of pain, be it emotional or physical.

Basically he would testify to the fact that Heroin addicts will do most anything to get away from hurt, pain, or what have you.

The other medical witnesses were offered to describe defendant's condition at the time of his arrest.

The voir dire which the court offered to the defense never occurred. The State argues that the defense never did make an offer of proof which showed that the offered evidence was relevant to negation of intent, as opposed to the criminal responsibility issue to be decided in the second phase. It appears that the defense chose not to bring its witnesses in for extended testimony which would inevitably be excluded. Since *Burnham* had not yet been decided the defense could not have relied on it in objecting to the presiding justice's ruling.

In *State v. Bridges, supra*, the trial was held before *Burnham* but we found that the trial justice properly applied 17–A M.R.S.A. § 58(1–A) and "considered . . . the psychiatric and psychological testimony in determining whether there existed a reasonable doubt of the existence of a [culpable] state of mind." 413 A.2d at 942. In the present case, the presiding justice said that he would not admit such evidence for any purpose. He did, however, anticipate *Burnham* by allowing defendant to make an offer of proof.

A necessary element of all of the crimes charged against Mishne is intentional conduct as defined in 17–A M.R.S.A. § 10(1):

1. "Intentionally."

A. A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

B. A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes that they exist.

■ Defense counsel's offer of proof, quoted above, does not suggest that the evidence would have generated any doubt that Mishne's conduct was intentional. The offer stated only that the evidence would show that Mishne was in a state of withdrawal, and that an addict in this state suffers from a "compulsion" to obtain drugs. Existence of a compulsion, or a compelling need, does not tend to negate a conscious purpose to cause certain results. Nor does evidence of a compelling need tend to show that a defendant lacked conscious awareness of the attendant circumstances of his actions. *See State v. Sommer*, Me., 409 A.2d 666 (1979). In fact, evidence of a compelling need tends to confirm the conclusion that defendant acted with awareness and with the conscious object of fulfilling that need.

■ The expert testimony might have been relevant to establish a lack of criminal responsibility under 17–A M.R.S.A. § 58(1), if defendant's "compulsion" tended to show a lack of "substantial capacity to conform his conduct to the requirements of the law." As we said in *State v. Ellingwood*, Me., 409 A.2d 641, 646 (1979), and again in *State v. Page*, Me., 415 A.2d 574, 577 (1980) (quoting *Ellingwood*):

Inability to control one's actions does not negate the existence of a culpable mental state; rather, it serves as an excuse.

Under 17–A M.R.S.A. § 59(2)(B), evidence of a mental disease or defect which is offered to establish lack of criminal responsibility under section 58(1), is only admissible in the second phase of a bifurcated trial.

■ We hold that the presiding justice did not err in excluding the evidence, as described in the defense's offer of proof, from the first phase of the trial. Although his general statement, that evidence of abnormal condition of mind would be entirely inadmissible in the first phase, was incorrect, we cannot say that he erred when no evidence was presented to him which was in fact admissible under section 58(1–A).[3]

---

3. The State argues that the case authority is against the proposition that evidence of addiction withdrawal can negate intent, citing Annot., 73 A.L.R.3d 195 (1976); *see also* Annot.,

73 A.L.R.3d 16 (1976). Because we rule that defendant's offer of proof failed to show that his evidence was admissible under § 58(1–A), we have no occasion to consider the State's

The same conclusion must be reached in respect to the admissibility of the evidence if offered to show intoxication under 17–A M.R.S.A. § 58–A. That section reads as follows:

> 1. Intoxication is not a defense unless it establishes a reasonable doubt as to the existence of an element of the offense.
>
> 2. When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he not been intoxicated, such unawareness is immaterial.
>
> 3. As used in this section:
>
> A. "Intoxication" means a disturbance of mental capacities resulting from the introduction of alcohol, drugs or similar substances into the body; and

.    .    .    .    .

Although the definition of "element of the crime" in 17–A M.R.S.A. § 5 contains several elements, the history and structure of section 58–A suggests that the words "an element of the offense" contained in subsection 1 refer only to those culpable states of mind defined in 17–A M.R.S.A. § 10. The criminal code originally provided that "the existence of a reasonable doubt as to *any* culpable state of mind ... may be established by any relevant evidence, including evidence of an abnormal condition of mind or intoxication.... Intoxication is otherwise no defense." 17–A M.R.S.A. § 5(4) (1975) (emphasis supplied). Subsection 4 was subsequently repealed, 17–A M.R.S.A. § 58(1–A) added to deal with abnormal condition of mind, and 17–A M.R.S.A. § 58–A added to deal with intoxication. P.L.1975, ch. 740, § 25.

▆▆ The original version of section 58–A commenced with the words: "Intoxication is no defense, affirmative or otherwise except as follows:" and then dealt with intentional or knowing conduct separately from reckless conduct. The present revision of section 58–A (P.L.1977, ch. 510, §§ 26, 27) deals with intentional or knowing conduct in subsection 1 and with reckless conduct in subsection 2. The separation is for the purpose of dealing differently with reckless conduct resulting from self-induced intoxication. We perceive no legislative purpose to extend the defense of intoxication beyond the element of culpable state of mind. This interpretation is reinforced by the definition of intoxication as "a disturbance of mental capacities" which continued in effect throughout these revisions.

▆▆ The question in this case is whether defense counsel's offer of proof was sufficient to show that his witnesses would testify that, as a result of the use of drugs, Mishne was suffering "a disturbance of mental capacities" which would tend to generate a reasonable doubt as to Mishne's intentional state of mind. The offer suggests that the evidence would show both the physical and psychological condition of a drug addict in withdrawal. We assume *arguendo* that "a disturbance of mental capacities" could be interpreted broadly to include this physical and psychological condition. "Disturbance" is a relative word which can be applied to either mild or very serious conditions. To be relevant, however, the disturbance must tend to generate a doubt as to a culpable state of mind, and the defendant's evidence must be related to the mental state in question. As we have already discussed, however, the defense's offer of proof failed to show that any testimony would be offered which would generate any doubt as to Mishne's conscious awareness or that he acted intentionally.[4] We do not hold, and do not wish to imply, that evidence of addiction withdrawal or anything else which differs from the common forms of "intoxication" could never be shown to be "a disturbance of mental capacities resulting from the introduction of

argument that evidence of withdrawal could never be admissible under § 58(1–A).

**4.** Mishne's own testimony asserted that he was not consciously aware of what he was doing, but this testimony was not discussed in counsel's offer of proof. Nor was it excluded by the presiding justice.

alcohol, drugs or similar substances into the body." We hold only that the offer of proof in this case did not show that the evidence would generate any doubt that the defendant consciously knew and intended the consequences of his actions. The only doubt which might have been raised was as to the defendant's capacity to conform his conduct to the law.[5]

■ Capacity to conform to the law is a form of "mental capacity," and there is no doubt that it can be disturbed or lost by the ingestion of alcohol, drugs or similar substances. But the loss of capacity to conform does not establish a reasonable doubt as to any element of any offense, and therefore, if it is the only result of defendant's intoxication, that intoxication is not a defense under § 58–A. Indeed, if such a defense were available it would probably prevent conviction whenever a person acted under the influence of alcohol or drugs. *Cf. State v. West*, Me., 416 A.2d 5 (1980). We conclude, therefore, that the presiding justice did not err in refusing on the basis of Mishne's offer of proof to admit evidence of withdrawal as intoxication under 17–A M.R.S.A. § 58–A.[6]

In addition to its offer of proof, the defense also submitted proposed jury instructions. The defendant relies in part on those instructions in his argument on appeal that he was not allowed to present fully to the jury the issue of withdrawal as intoxication. The first of these instructions reads: "Under Maine law, a person is criminally liable for his acts only if he engages in voluntary conduct." The proposed instruction cites 17–A M.R.S.A. § 51, subsection (1), which reads:

A person commits a crime only if he engages in voluntary conduct, including a voluntary act, or the voluntary omission to perform an act of which he is physically capable.

The defendant's testimony suggested that his present addiction was involuntary, but he did not pursue a defense of involuntary intoxication. *See State v. West, supra; State v. Rice*, Me., 379 A.2d 140 (1977). Nor has Mishne raised this argument on appeal.[7] He does argue that the jury should have been given his second proposed instruction, which reads:

In considering what is and what is not voluntary conduct, you may consider if you feel it is relevant, the defendant's testimony as it relates to the effect [of] drugs and the withdrawal from drugs as they relate to voluntariness of his conduct.

■ Section 51 does not provide a definition of voluntary. Its meaning can be determined from its place in the overall framework of the Criminal Code. We note first that section 51 does not describe a culpable state of mind which must be proven in addition to the state of mind, defined in section 10, required by the law defining crime. Section 11 expressly limits the states of mind required by the Code to those listed in section 10.

We note secondly that section 51 does not create a defense of duress, which is treated separately under section 54 (defining duress as compulsion by threat or force). Nor is it necessary to rely on section 51 when evidence may be introduced to negate a culpa-

5. In his offer of proof, Mishne did not indicate that the testimony would be directed to the issue of voluntary conduct which must be proven under 17–A M.R.S.A. § 51(1), nor did his description of the proposed testimony suggest that it would be relevant to that issue. A question concerning voluntary conduct may arise regardless of whether a defendant was intoxicated or not, and regardless of whether the intoxication was self-induced or not. See our discussion of section 51(1) *infra*.

6. Mishne's own testimony at trial was that he had ingested large amounts of drugs and alco-

hol at the time of the incidents. The presiding justice properly instructed the jury concerning the possibility of reasonable doubt as to the requisite culpable mental state arising from the effects of the recently taken drugs and alcohol. The court prohibited any mention of addiction withdrawal in closing argument on intoxication.

7. We intimate no opinion on whether involuntary addiction is equivalent to involuntary intoxication, or on the merits of such a defense.

ble state of mind because of mental disease or defect under section 58 or intoxication under section 58–A. Section 51 could not have been intended to duplicate the provisions of these other sections.

The Model Penal Code defines voluntary in terms of the meaning of involuntary actions: reflexes, convulsions, movements during unconsciousness or sleep, actions during hypnosis or resulting from hypnotic suggestion. Model Penal Code § 2.01(2); see Model Penal Code § 2.01 Comment (Tent.Draft No. 4, 1955); see also Lafave and Scott, *Criminal Law* 179–181 (1972). In our view, the purpose of section 51 is to prevent punishment of such involuntary physical actions which are not the product of the actor's conscious will. The burden is on the state to prove that the defendant was not acting in an unconscious, involuntary way.

The record discloses that the presiding justice instructed the jury in entirely correct terms:

> To be voluntary an act must be the result of an exercise of a defendant's conscious choice to perform them, and not the result of reflex, convulsion, or other act over which a person had no control. . . .

There was no error in this instruction or in the refusal of the defendant's proposed instruction.

### III. *Rejection of the Insanity Defense*

Mishne argues that in the second phase of the trial, which was jury-waived, the finding of the presiding justice was against the weight of the evidence. A similar argument was raised in *State v. Ellingwood*, Me., 409 A.2d 641 (1979). There, the defendant presented the only expert testimony, and the presiding justice found he had not met his burden. We affirmed, saying that "the presiding justice was entitled to give the evidence the weight he felt it was due." *Id.* at 645. We went on to say, in language subsequently quoted in *State v. Page*, Me., 415 A.2d 574, 578 (1980):

> [The] line between normal, but criminal, behavior, and abnormal behavior, excusing one of criminal responsibility, must be

drawn by the ultimate fact-finder on the basis of a complex evaluation of moral, legal and medical judgments. That decision will only rarely be reversed by an appellate court [and then only] upon a strong showing that no reasonable fact-finder could conclude otherwise than that the defendant lacked criminal responsibility for his conduct.

409 A.2d at 646. These decisions were followed in *State v. Lowberg*, Me., 416 A.2d 264 (1980).

▪ The present case is not the rare case which necessitates reversal. The presiding justice was entitled to find that Mishne had failed to meet his burden of proving by a preponderance of the evidence, as required by 17–A M.R.S.A. § 58(3), that he lacked criminal responsibility under the provisions of section 58(1). The presiding justice was entitled to weigh the testimony of the defendant's witnesses and to conclude that the defendant had failed to show that at the time of the criminal conduct he "lacked substantial capacity to conform his conduct to the requirements of the law, or . . . to appreciate the wrongfulness of his conduct." Our review of the record indicates that, even if the presiding justice believed the defense witnesses' testimony, he rationally could have concluded that the defendant had failed to show that at the time of his action his mental condition was such that he lacked criminal responsibility.

While we do not find grounds for reversal of the trial court's decision, we do find it necessary to comment on the testimony of the state's psychiatric witness. He testified that in his opinion the defendant had no history of psychotic episodes "in the absence of drugs." He then testified that "drug-induced psychosis" is "like a state of intoxication." He clarified the use of the term "psychosis," saying that it is a generic term which "generally means in the broader sense loss of contact with reality." He characterized psychosis as an "umbrella term" which could include intoxication as well as other forms of disorders. He testified then that "the drug-induced psychosis would tend to disappear in the absence of

the drug." The prosecutor followed with a hypothetical question:

Q Then, Doctor, what significance would you professionally attach to a patient for example who in the past was diagnosed on at least three occasions as being psychotic, however, the same patient examined by different physicians over a period of time when he was free and to everyone's knowledge absolutely free of drugs would not be diagnosed as a psychotic?

A I would think that is strong presumptive evidence that the disturbance is drug-induced rather than the opposite.

The doctor then testified that he and his assistant had on two occasions diagnosed Mishne as non-psychotic, although defense witnesses had reached the opposite conclusion both before and after the crime. The prosecutor asked if the doctor had a "specific diagnosis" of Mishne. We quote the doctor's response and the following questions by the prosecutor:

A I have no specific diagnosis as such to offer other than a general, of course the finding that polydrug use is a diagnosis and that diagnosis is made by history and that history is not refuted in any way. I do feel that there is a good bit of evidence to indicate that Mr. Mishne had significant interpersonal difficulty and is a troubled man and that he tries to cope with life through the use of drugs, but I did not find any evidence to show that this approach [sic] say a thinking disorder, a mood disturbance.

Q A character disorder rather than what we commonly refer to in terms of our statute as a mental defect or disease?

A That's correct, yes.

The presiding justice further questioned the witness and elicited the following conclusion:

If psychosis did exist on the date of the crime, then it must have had something to do with the drugs.

So my report concludes that there is no evidence of a mental disease as such, namely, like schizophrenia but there's a high probability that there was a state of intoxication based on the history that large quantities of drugs had been consumed.

■ Our particular concern is with the prosecutor's asking the witness for a conclusion in the terms of section 58, i. e., whether Mishne had a "mental disease or defect." This testimony illustrates the danger inherent in allowing a medical expert to testify in terms which express legal conclusions rather than conclusions which are clearly within the specialized knowledge of the expert. Under M.R.Evid. 701 and 702, the presiding justice may exclude testimony by an expert which is either beyond his expertise or presented in such terms that it would not assist the trier of fact. See State v. Flick, Me., 425 A.2d 167 (1981); State v. Durgin, Me., 311 A.2d 266 (1973); see also M.R.Evid. 403. There was no objection to the testimony and we do not conclude on appeal that the presiding justice was misled by it. But we must emphasize that the question of what constitutes a mental disease or defect within the meaning of 17-A M.R.S.A. § 58 is a question of law, and it cannot be decided by a psychiatric witness for either the defense or the state. We make this point here in the hope that future fact-finders will not be misled by testimony of this sort.

Section 58(2) defines "mental disease or defect" as "any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs the processes and capacity of a person to control his actions." What constitutes an "abnormal condition of the mind" within the meaning of this section is a legal question which is not answered by a psychiatrist's labelling of a condition as a "character disorder." The function of expert testimony under this section is to assist the trier of fact in determining whether, at the time of the defendant's actions, any abnormal condition of the mind existed which in fact impaired the defendant's capacities sufficiently to relieve him of criminal responsibility. The expert can best perform this function by offering testimony which avoids, as much as possible, confusing the

witness's opinions as to the facts of the case with the legal conclusions which must be drawn by the fact-finder.

 A further difficulty with the testimony of the State's witness is his treatment of the concept of a "drug-induced psychosis." Having testified that the defendant did suffer from drug-induced psychosis, the doctor proceeded to give his opinion that the defendant had no mental disease or defect, as set forth above. As a legal conclusion, it would be incorrect to say that a psychosis cannot be a mental disease or defect within the meaning of section 58 merely because it was drug-induced. We need not wrestle here with all the factual and legal difficulties involved in distinguishing a state of intoxication from an "abnormal condition of the mind." It is sufficient to point out that a defendant who seeks to prove an abnormal condition of mind cannot be defeated *merely* by a showing that his condition originated in the use of drugs. A drug-induced psychosis is by no means necessarily excluded from the definition of mental disease or defect by the last sentence of section 58(2) which excludes "[a]n abnormality manifested only by ... excessive use of ... drugs." Such a psychosis may well be just as permanent and just as crippling as any other mental illness. The exclusion quoted above applies only where the *sole* manifestation of mental abnormality consists of excessive use of drugs.

Defendant has made no argument on appeal that evidence concerning addiction was improperly excluded from the second phase of the trial. The defense strategy in the second phase was different from that in the first phase: the expert witnesses all testified to a psychotic disorder independent of Mishne's drug addiction. The defense never called the witness from the drug rehabilitation clinic whom he had sought to have testify in the first phase. We are thus not presented with any issues concerning whether drug addiction can constitute a mental disease or defect under 17–A M.R. S.A. § 58. *See* Annot., 73 A.L.R.3d 16, § 11 at 61–64 (1976). Moreover, we need not speculate about the effect of the testimony of the State's witness. The defendant bore the burden of proof, and the presiding justice as fact-finder was not required to accept the testimony of any witness. He need only have found, as he did, that the defendant had failed to meet his burden of proof. Applying the standard of review applied in *Ellingwood, supra, Page, supra,* and *Lowberg, supra,* we affirm the judgments of conviction.

The entry is:

Judgments of conviction affirmed.

All concurring.