2004 ME 67

**STATE of Maine**

v.

**Francoise G. GALLANT.**

Supreme Judicial Court of Maine.

Argued: April 13, 2004.

Decided: May 13, 2004.

Revised June 22, 2004.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General (orally), Fernand R. LaRochelle, Asst. Attorney General, Augusta, for State.

James P. Howaniec (orally), Lewiston, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Francoise G. Gallant appeals from a judgment of conviction for murder, 17–A M.R.S.A. § 201(1)(A) (1983 & Supp.2002),[1] entered in the Superior Court (Androscoggin County, *Delahanty, J.*) following a jury trial. Gallant challenges the sufficiency of the evidence, contending that because he was heavily intoxicated and was suffering from an abnormal condition of the mind, he lacked the capability to form the required intent to commit murder. We are unpersuaded by Gallant's contentions and affirm the judgment.

---

1. This statute was amended after the commission of the charged crime by P.L.2001, ch. 383, § 8 (effective Jan. 31, 2003), *codified at* 17–A M.R.S.A. § 201 (Supp.2003).

[¶ 2] When reviewing the sufficiency of the evidence, we view "the evidence in 'the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged.'" *State v. Bates*, 2003 ME 67, ¶ 19, 822 A.2d 1129, 1134 (quoting *State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027).

[¶ 3] At Gallant's request, the court instructed the jury on the issue of intoxication. Title 17–A M.R.S.A. § 37(1) (1983) provides: "[E]vidence of intoxication may raise a reasonable doubt as to the existence of a required culpable state of mind." The State concedes that Gallant sufficiently raised the issue of intoxication. Although the State does not have the burden of disproving the existence of the issue of intoxication beyond a reasonable doubt, as it would if the issue of intoxication was a statutory defense, *see State v. Barrett*, 408 A.2d 1273, 1276 (Me. 1979); 17–A M.R.S.A. § 101(1) (Supp. 2003), the State must prove, beyond a reasonable doubt, that Gallant acted intentionally or knowingly in causing the victim's death, 17–A M.R.S.A. § 32 (1983); 17–A M.R.S.A. § 201(1)(A).

[¶ 4] Gallant also raised the issue of an abnormal condition of the mind. The court instructed the jury on the issue notwithstanding the State's contention that the trial evidence did not support the instruction. Title 17–A M.R.S.A. § 38 (1983) provides: "Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind." Even if Gallant had presented sufficient evidence to generate an instruction, an abnormal condition of the mind "only *permit[s]* the fact-finder to entertain a reasonable doubt; it could not *compel* ... [the] fact-finder, to have such a reasonable doubt." *State v. Page*, 415 A.2d 574, 577 (Me.1980).

[¶ 5] The victim was Gallant's girlfriend, and the cause of her death was strangulation. There is substantial evidence supporting the jury's conclusion that Gallant acted intentionally or knowingly in causing the victim's death. Similar to the circumstances in *Barrett*, 408 A.2d at 1277, Dr. Ann Leblanc, of the State Forensic Service, testified that in her opinion, although Gallant's intoxication impaired his judgment that night, he still had the ability to act intentionally. Leblanc also testified that, on the night of the offense, Gallant was not suffering from an abnormal condition of the mind and he had the ability to act intentionally and in a goal-directed manner. She also testified that Gallant was not suffering from a mental illness so severe that he could not appreciate the wrongfulness of his conduct. Dr. Brian Rines, a psychologist hired by Gallant, did not contradict Leblanc's opinion. Similar to the situation in *State v. Haberski*, 449 A.2d 373, 379 (Me.1982), there was evidence of previous domestic violence in the relationship. Additionally, within hours before the victim's death, a neighbor heard a woman scream from inside the victim and Gallant's apartment and also heard a man say, "I'm tired of your shit."

[¶ 6] In *Barrett*, 408 A.2d at 1277; *Haberski*, 449 A.2d at 379; and *State v. Grant*, 417 A.2d 987, 990 (Me.1980), post-offense statements and conduct were relevant evidence on the issue of intoxication. Here, Gallant admitted that he was angry with the victim when she bit him, and that he knew she did not want the towel around her neck because she was struggling. After Gallant killed the victim, he went into the kitchen, ate a hamburger, and drank a beer before heading to his friend's apartment. Gallant also took a necklace from the victim's body and sold it for $20 so that he could buy more beer. Gallant admitted to his friend that he "had done the ultimate thing" and had killed the victim. Ad-

ditionally, when Gallant was at his friend's apartment, he said that "everyone knows [the victim] drinks and takes pills, so no one is going to know [she's dead] for a day or two."

[¶ 7] Moreover, Chief Medical Examiner Margaret Greenwald testified that it only takes fifteen to twenty seconds of constant pressure to render a person unconscious, and it takes at least another sixty to ninety seconds of constant pressure to cause death. Gallant testified that he continued to apply pressure to the victim's neck even after she stopped screaming, although he previously testified earlier that he only intended to calm her down.

[¶ 8] This evidence, when viewed in the light most favorable to the State, is sufficient to permit a jury to rationally find, beyond a reasonable doubt, that even if Gallant was intoxicated or was suffering from an abnormal condition of the mind on the night of the offense, he acted intentionally or knowingly in causing the victim's death. *See Haberski,* 449 A.2d at 379; *Page,* 415 A.2d at 577.

The entry is:

Judgment affirmed.