MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 90
Docket:        Han-13-109
Submitted
 On Briefs:    September 26, 2013
Decided:       October 31, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## WILLIAM E. KEPNER

GORMAN, J.

[¶1]   William E. Kepner appeals from a judgment of conviction of aggravated criminal trespass (Class C), 17-A M.R.S. § 402-A(1)(A) (2012), and unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(B) (2012), entered by the trial court (*A. Murray, J.*) after a jury-waived trial.  Because the evidence was sufficient for the court to rationally find beyond a reasonable doubt that Kepner's actions were intentional and knowing, even though he was under the influence of prescription drugs and alcohol and claimed that he was in a blackout state at the time the acts were committed, we affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts are undisputed.  In the early hours of July 17, 2011, Kepner entered the home of his adult neighbor through a screened bedroom

window and, without her express or implied consent, touched and penetrated her genitals with his hand. During the encounter, Kepner told the victim "I'm not going to hurt you" and "you'll like this," and then instructed her to engage in oral sex. At that point, the victim tried to escape by asking to go to the bathroom. Feigning disorientation, she moved toward the door, but Kepner said "no, not that way," grasped her arm, and steered her toward the bathroom. She retreated into the bathroom and locked the door behind her. About a half hour later, the victim unlocked the door and, finding Kepner gone, fled her home and went to a neighbor's house to call the police. Within an hour, a Maine State Police trooper interviewed Kepner and took a DNA swab of his hands. Subsequent processing revealed the victim's DNA on Kepner's hands, and Kepner was arrested on July 22, 2011.

[¶3]  In October 2011, Kepner was charged with burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2012), aggravated criminal trespass (Class C), 17-A M.R.S. § 402-A(1)(A) (2012), and unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(B) (2012). Kepner waived indictment and pleaded not guilty to all three charges. Several months later, on Kepner's motion, the court ordered a mental evaluation pursuant to 15 M.R.S. § 101-D(2) (2012).[1]

---

[1]  A court may order a defendant to be evaluated by the State Forensic Service to obtain information about the defendant's mental state at the time of the crime under several circumstances, including upon motion by either the defendant or the State. *See* 15 M.R.S. § 101-D(2)(A) (2012).

[¶4] At a jury-waived trial, the victim and the trooper each testified about their respective encounters with Kepner on the day in question, explaining that, although Kepner had smelled of alcohol, his speech was not slurred and he was not unsteady on his feet. Kepner testified that he had no recollection of entering the victim's home or touching her. He explained that he was an alcoholic and often experienced blackouts while under the influence of alcohol. He also stated that he had been prescribed pain medications and was under the influence of these medications and alcohol at the time of the encounter with the victim.

[¶5] The psychiatrist who had performed the Title 15 evaluation testified that, based on Kepner's continuing assertions that he had no memory of the evening, it is likely that Kepner was in a blackout state at the time he entered the victim's home and attacked her. The psychiatrist described a "blackout" as a period of amnesia, usually caused by alcohol or other substances, when the memory part of the brain is completely nonfunctional but the individual is able to perform purposeful activity. He testified that, although a person experiencing a blackout may be more disinhibited and therefore be acting with increased impulsiveness and impaired judgment, he is nonetheless able to form a plan to do an activity and carry it out. He also stated that Kepner might have had some subconscious hostility toward the victim, and this subconscious motivation could

4

have impaired his sense of judgment, propriety, and consequences; however, this did not mean that Kepner was not responsible for his behavior.

[¶6] Based on the trial evidence, the court found that Kepner was likely experiencing a blackout during the events in question but that, given the nature and number of sequential steps he took and statements he made in the course of carrying out those steps, Kepner's acts were the result of his conscious choice. Accordingly, the court entered a judgment of guilty on the aggravated criminal trespass and unlawful sexual contact offenses.[2] Kepner was sentenced to two concurrent terms of four years of imprisonment, with all but one year suspended, and one year of probation. He timely appeals the conviction.

## II.  DISCUSSION

[¶7] We review the evidence in the light most favorable to the State to determine whether the fact-finder rationally could have found beyond a reasonable doubt every element of the offense charged. *See State v. Gallant*, 2004 ME 67, ¶ 2, 847 A.2d 413. The sole issue on appeal is whether Kepner acted with the requisite culpable state of mind when he entered the victim's dwelling without her permission and then subjected her to sexual contact without her consent. Kepner asserts that, because he was motivated by his subconscious thoughts, was

---

[2]  The court found that reasonable doubt existed as to whether Kepner had the requisite intent to commit a sexual act at the time he entered the victim's dwelling and, consequently, found him not guilty of the burglary charge.

experiencing a blackout, and was under the influence of prescription drugs and alcohol during the encounter with the victim, he was not consciously aware of his acts and thus did not have the necessary knowing or intentional mental state attendant to the charged offenses.

[¶8]  Contrary to Kepner's assertions, that he may have been driven by a subconscious motive is immaterial to ascertaining whether he had a culpable state of mind.[3]  Likewise, that Kepner was likely experiencing a blackout during the encounter does not, in itself, negate the existence of his culpable mental state. *See Mutual Fire Ins. Co. v. Hancock*, 634 A.2d 1312, 1313 (Me. 1993) (stating that a party's blackout state did not negate his intent to commit physical acts).

[¶9]  Evidence of intoxication may raise a reasonable doubt as to whether a defendant intentionally or knowingly intended an act or result.  *See* 17-A M.R.S. § 37 (2012); *State v. Foster*, 405 A.2d 726, 729 (Me. 1979) (noting that, although self-induced intoxication is not a general defense, it may negate the existence of an intentional or knowing mental state).  The State therefore bore the burden of proving beyond a reasonable doubt that Kepner's intoxication did not prevent him from knowingly entering the victim's dwelling without her permission or any right

---

[3]  Motive refers to "the inducement to do some act," whereas intent refers to "the mental resolution or determination to do it."  BLACK'S LAW DICTIONARY 813 (7th ed., 1999).  "When the intent to do an act that violates the law exists, motive becomes immaterial."  *Id*.

6

to so enter, and then intentionally subjecting the victim to sexual contact without her consent. *See State v. Barrett*, 408 A.2d 1273, 1276 (Me. 1979).

[¶10] In this instance, substantial evidence existed to show that Kepner's actions were taken knowingly and with intent. Kepner was able to enter the victim's dwelling by carrying or dragging a chair over to the victim's house, placing the chair under a screened window, and then crawling through the window. Once inside, he was able to locate the victim in a dark room, subject her to sexual contact that included penetration, tell the victim "I'm not going to hurt you" and "you'll like this" during the encounter, instruct her to engage in oral sex, and direct her away from the exit and toward the bathroom when she attempted to escape. This evidence was rationally regarded by the fact-finder as proof beyond a reasonable doubt that, even though he was under the influence of prescription drugs and alcohol, Kepner made a conscious choice to engage in a course of conduct that was intentional and knowing. *See State v. Grant*, 417 A.2d 987, 990-91 (Me. 1980) (affirming that a defendant's state of intoxication was insufficient to negate his conscious intent to commit a robbery).

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Jeffrey C. Toothaker, Esq., Ellsworth, for appellant William Kepner

Carletta M. Bassano, District Attorney, and Mary N. Kellett, Asst. Dist. Atty., Prosecutorial District No. VII, Ellsworth, for appellee State of Maine

Hancock County Superior Court docket number CR-2011-133

FOR CLERK REFERENCE ONLY