MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2014 ME 159
Docket:         Han-14-60
Submitted
 On Briefs:     December 1, 2014
Decided:        December 31, 2014

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

ALAN D. PERKINS

MEAD, J.

[¶1]   Alan D. Perkins, following a jury trial, appeals from a judgment entered by the trial court (*A. Murray, J.*) convicting him of burglary (Class B), 17-A M.R.S. § 401(1)(B)(5) (2014); theft by unauthorized taking (Class C), 17-A M.R.S. § 353(1)(B)(6) (2014); and violation of a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2014).   Perkins contends that the court effectively prevented him from testifying when, prior to trial, it reserved ruling on the extent to which the State would be permitted to impeach his potential testimony.   He also asserts that the evidence was insufficient to support the jury's verdict.   We affirm the judgment.

## I. BACKGROUND

[¶2]  The evidence admitted at trial, viewed in the light most favorable to the State, would allow the jury to rationally find the following facts.  *See State v. Crossman*, 2002 ME 28, ¶ 2, 790 A.2d 603.  On May 21, 2013, Larry Fang, his son Jerry Fang, and Bruce Chang, all employees of Crowley Seafood in Ellsworth, a business that buys elvers[1] from licensed fishermen, were working at the Crowley warehouse.  Sometime in the midafternoon, Jerry and Bruce went to the Fangs' apartment to eat; Larry left to join them at about 3:30 p.m., locking the warehouse door behind him.  No one was in the warehouse when he left, and no one other than employees had permission to be inside.  There were more than fifty pounds of live elvers in the warehouse, worth about $100,000.

[¶3]  When the men returned to the warehouse approximately ninety minutes later, Larry saw Sherri Runsey, a woman whom he had seen several times before with one of Crowley's top elver suppliers, parked outside the warehouse.  She had backed into a parking space and it appeared to Larry that she was waiting for someone.  When he approached Runsey, she exited the vehicle and began asking him whether a person needed a license to sell elvers to him.  Larry was sure that she knew that a license was required because he had answered that question for her many times before.  Suspicious, Larry told Jerry to check the warehouse.

---

[1]  An elver is a juvenile American eel.

[¶4] Jerry saw that the warehouse door was open slightly. When he went inside, he saw Perkins using a net to take elvers out of a tank. There was a five-gallon bucket at Perkins's feet that contained elvers but no water. Perkins had never sold elvers to Crowley Seafood, and neither he nor Runsey had called that day to say that they had any to sell. Jerry recognized Perkins from a dispute a week earlier involving Perkins and another fisherman. When Jerry discovered him, Perkins fled and ran up the street. The Fangs pursued and caught him, but he managed to escape. Jerry saw a screwdriver in Perkins's hand as he ran. A thorough police search that night failed to locate him.

[¶5] A month later, Perkins was arrested on a warrant and interviewed at the Hancock County Jail by Officer Mote of the Ellsworth Police Department. Mote had been the responding officer on the day Perkins was discovered inside the warehouse, and he testified that he saw damage and pry marks on the warehouse door casing. Perkins told Mote that he had gone to the warehouse to get water for elvers that he had in a "dry bag," and that the building's door was already open. He denied having a screwdriver, but admitted he had run when Jerry confronted him. Perkins also told Mote that he had watched the police search for him while hiding behind some bushes next to a house.

[¶6] On August 8, 2013, the Hancock County Grand Jury indicted Perkins on charges of burglary, theft, and violation of condition of release, and a jury trial

4

was held on November 18-19, 2013. Perkins did not testify. The jury returned verdicts of guilty on the charges of burglary and theft by unauthorized taking; Perkins waived his right to a jury on the charge of violating a condition of release and, after trial, the court entered a finding of guilty on that count. At sentencing the court imposed an aggregate sentence of seven years' imprisonment. Perkins appealed from the conviction and from the sentence. The Sentence Review Panel denied Perkins's application for leave to appeal from the sentence.

## II. DISCUSSION

A.    Perkins's Decision Not to Testify

[¶7]    On the morning of trial, Perkins made two motions in limine. In response to the first, the court excluded evidence of Perkins's three prior convictions for burglary and three prior convictions for theft, but ruled that if Perkins testified the State would be allowed to impeach him by inquiring into his convictions for falsifying physical evidence and negotiating a worthless instrument.

[¶8]    The second motion concerned Officer Mote's report, which stated that Perkins told him that he ran "because of his reputation and that he was on bail conditions." Perkins argued that the State should not be allowed to elicit that statement in its case-in-chief, but he agreed that if he testified and gave a different reason for running, then ordinarily inquiry concerning the statement would be

allowed. Defense counsel argued, however, that "the next logical question after that is, well, what reputation are you referring to. And in that situation I don't think that there's any other answer that Mr. Perkins could give except to disclose the prior criminal history that was just ruled inadmissible in this case." Perkins asked the court to rule on both the admissibility of the statement during the State's case-in-chief, and the extent of the State's inquiry concerning the statement that would be allowed should he testify and contradict what he told Mote. Saying, "I think we'll take it step by step," the court excluded the statement from the State's case-in-chief, but ruled that "if the Defendant gives any reason for running, then I am going to allow the State to at least have Officer Mote testify about the reason that was given by the Defendant . . . . [a]nd then we'll take it from there. If we get that far . . . ."

[¶9] Perkins asserts that the court's ruling deprived him of a fair trial by improperly forcing him to choose between testifying, with the risk of having the jury learn of his previously excluded burglary and theft convictions, and giving up his right to testify altogether. Because Perkins did not renew his pretrial motion after the State rested its case-in-chief and did not testify, he failed to preserve this issue for appeal; accordingly, we review only for obvious error. *State v. Holland*, 2012 ME 2, ¶ 26 n.6, 34 A.3d 1130 ("Because the court's ruling on the motion in limine was not absolute and [the defendant] did not renew his request . . . the

6

evidentiary issue was not preserved."); *State v. Dwyer*, 2009 ME 127, ¶ 29, 985 A.2d 469 ("Because [the defendant] did not testify, we review [the admissibility of a prior conviction] only for an obvious error . . . ."); *State v. Braley*, 2003 ME 125, ¶ 4, 834 A.2d 140; *State v. Gray*, 2000 ME 145, ¶ 23, 755 A.2d 540. As stated by one authority, "the fact that the trial court has acted on a motion in limine does not relieve counsel of making objections and offers of proof at the appropriate points in the trial in order to make a record and preserve points of error for appeal." Field & Murray, *Maine Evidence* § 103.7 at 28-29 (6th ed. 2007).

[¶10] Maine Rule of Criminal Procedure 12(c), governing pretrial motions in limine, explicitly allows a trial court to "rule on the motion or continue it for a ruling at trial." *See State v. Billadeau*, 597 A.2d 414, 416 (Me. 1991) ("Rule 12(c) explicitly allows the trial court to reserve ruling on a motion *in limine*."); *State v. Ayers*, 468 A.2d 606, 609 (Me. 1983) ("[A] trial judge is perfectly justified in refusing to make a final ruling *in limine* on the admissibility of evidence, preferring instead to hear the testimony of the witnesses during the trial.").

[¶11] Here, the court did not obviously err in declining to give Perkins a pretrial ruling based on a threefold hypothetical, namely that (1) he would choose to testify after hearing the State's case-in-chief; (2) his testimony would include an explanation concerning why he ran that differed from the statement in Mote's

report, thus opening the door to impeachment; and (3) the only option available to the court at that point would be to allow the State to equate the "reputation" that Perkins referred to with his prior convictions that the court had previously excluded. To the contrary, it is possible that even if the first two parts of Perkins's hypothetical occurred, the third would not have. In that situation, the court could have confined the State to eliciting the bare statement contained in Mote's report—Perkins said that he ran "because of his reputation"—or it could have limited the State to arguing that in making that statement, Perkins was referring to the falsifying physical evidence and negotiating a worthless instrument convictions that the court had ruled would be admissible.

[¶12] We cannot know what the trial court would have done because Perkins did not renew his motion when, after the State rested its case-in-chief, the court engaged him in a colloquy concerning whether he wished to testify. Had he done so and accompanied the renewed motion with an offer of expected testimony, the court would have had an opportunity to consider the extent to which the State would be allowed to rebut that testimony. Given this record, we will not speculate as to whether rulings that the court might have made would constitute obvious error. *See Ayers*, 468 A.2d at 609 ("[I]t is not the duty of the court to make advisory rulings to assist counsel in planning trial tactics.").

8

B.     Sufficiency of the Evidence

[¶13]   Perkins challenges the sufficiency of the evidence supporting the jury's verdict.  The standard of review is well established:

> When a defendant challenges the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State to determine whether a fact-finder could rationally find beyond a reasonable doubt every element of the offense charged.  The jury is permitted to draw all reasonable inferences from the evidence and is free to selectively accept or reject testimony presented based on the credibility of the witness or the internal cogency of the content.

*State v. Hayden*, 2014 ME 31, ¶ 12, 86 A.3d 1221 (quotation marks and citation omitted).

[¶14]   Here, if the jury credited the testimony of the State's witnesses, as it was entitled to do, it could rationally find beyond a reasonable doubt that Perkins broke into the locked Crowley Seafood warehouse without permission, was discovered dipping valuable elvers from a storage tank into a bucket while a driver waited for him outside, and then fled from both the employees of the business and the police.  That evidence is sufficient to support the jury's verdict.  Perkins does not challenge the court's finding of guilt on the charge of violation of a condition of release that resulted from the verdict.

The entry is:

Judgment affirmed.

**On the briefs:**

Matthew J. Foster, Esq., Law Offices of Matthew J. Foster, P.C., Ellsworth, and Dawn M. Corbett, Esq., Law Office of Dawn M. Corbett, PA, Ellsworth, for appellant Alan Perkins

William B. Entwisle, Asst. Dist. Atty., Prosecutorial District No. VII, Ellsworth, for appellee State of Maine

Hancock County Superior Court docket number CR-2013-82
For Clerk Reference Only