MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 9
Docket:        Kno-14-424
  Argued:      October 8, 2015
Decided:       January 14, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

STATE OF MAINE

v.

CHARLES R. BLACK

GORMAN, J.

[¶1]  Charles R. Black appeals from a judgment of conviction of attempted murder (Class A), 17-A M.R.S. §§ 152(1)(A), 201(1) (2015); elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A) (2015); elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(B) (2015); aggravated assault (Class B), 17-A M.R.S. § 208(1)(C) (2011); aggravated assault (Class B), 17-A M.R.S. § 208(1)(B) (2011); and aggravated assault (Class B), 17-A M.R.S. § 208(1)(A) (2011), entered in the Superior Court (Knox County, *Wheeler, J.*) after a jury trial.[1] Black contends that the court erred by declining to change the trial venue given the amount and type of pretrial publicity surrounding his case.  He also challenges the sufficiency of the evidence supporting his conviction.  We affirm the judgment.

---

[1]  Title 17-A M.R.S. § 208 has since been amended, but not in any way that affects this appeal. P.L. 2015, ch. 358, § 1 (effective Oct. 15, 2015); P.L. 2011, ch. 640, § B-2 (effective Aug. 30, 2012).

## I. BACKGROUND

[¶2]   Viewing the evidence in the light most favorable to the State, the following facts were established at trial.  *See State v. Graham*, 2015 ME 35, ¶ 27, 113 A.3d 1102.  Black and Lisa (Black) Zahn were married in 2004.  In 2010, Zahn inherited a substantial sum of money and, in February of 2011, she discovered that Black had been having an affair with his high school girlfriend.  Although Black and Zahn had decided to try to salvage their marriage, their relationship remained tense and uncertain.

[¶3]   On April 7, 2011, at Black's suggestion, he and Zahn hiked Mount Megunticook in Camden.  They picnicked on Maiden Cliff, a steep peak roughly 700 feet high.  When Zahn turned her head away from Black, Black hit her three times on the back of her head with a large rock he had found at the scene.  He then dragged her to the edge of the cliff and pushed her over the side.  Zahn fell about ten feet down onto a small ledge.  She then dropped another thirty-five feet down a steep ravine while attempting to get away from Black, who was coming after her.  Soon after, Zahn saw Black tumbling down the mountain, "like a pinball almost," hitting trees and rocks as he fell.

[¶4]   Zahn made her way down the rest of the mountain, where she was helped by strangers who saw her and stopped their vehicle.  Zahn suffered life-threatening injuries, including scalp lacerations that went down to her skull, rib

fractures, a fracture of the sternum, a collapsed lung, and cuts and bruises on much of her body.

[¶5] Rescuers later found Black lying awake but unmoving some distance down the mountain. He, too, had suffered substantial injuries, including fractured ribs, a collapsed lung, and lacerations.

[¶6] On July 11, 2011, a grand jury indicted Black on six counts: attempted murder (Class A), 17-A M.R.S. §§ 152(1)(A), 201; elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A); elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(B); aggravated assault (Class B), 17-A M.R.S. § 208(1)(C); aggravated assault (Class B), 17-A M.R.S. § 208(1)(B); and aggravated assault (Class B), 17-A M.R.S. § 208(1)(A).[2] Black pleaded not guilty to all counts.

[¶7] On March 20, 2012, Black moved for a change of venue on the ground that the pretrial publicity surrounding the case was so "overwhelming," "extensively detailed," and prejudicial to Black that selecting a jury would be "an exercise in futility." With his motion, Black attached twelve news articles discussing the investigation, indictment, bail conditions, and trial schedule for the case. The court (*Hjelm, J.*) issued an order dated March 30, 2012, indicating that it

---

[2] The State also charged Black with two counts of domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2015), based on incidents that had occurred in March of 2011, but the State later dismissed those counts.

4

would defer ruling on the motion until an effort to impanel a jury in Knox County had been attempted.

[¶8]  Over two years later, on July 14, 2014, the court (*Wheeler, J.*) began the process of selecting a jury in the Knox County Superior Court.  On that day, the court conducted individual voir dire of each of the potential jurors who indicated that he or she had seen media coverage of the case, asked each the details of what the juror had heard and if the juror could be fair and impartial in the case, and excused those few jurors who stated that they could not be fair and impartial based on that coverage.  After the State and Black exercised their peremptory challenges, twelve jurors and three alternates were impaneled as the jury.  Of those, seven had seen no media coverage of the case and eight had seen some coverage but stated that they could be fair and impartial and base a verdict only on the evidence presented at the trial.  Black did not renew his motion for change of venue at any time during the process of impaneling, and at the end of jury selection, when the court asked, "And is the defense satisfied with the panel as seated?" Black's attorney responded, "Yes, Your Honor."

[¶9]  After a five-day jury trial in July of 2014, during which Black did not testify, the jury found Black guilty of all six counts.  The court entered a judgment on the verdict, sentencing Black to twenty-five years in prison with all but ten years suspended and six years of probation for the attempted murder count.  For

the elevated aggravated assaults, the court sentenced Black to twenty-five years in prison with all but four years suspended, concurrent with the attempted murder sentence. For the aggravated assault counts, the court sentenced Black to ten years in prison, also concurrent with the attempted murder sentence. Black timely appeals.[3]

## II. DISCUSSION

[¶10] Black argues that the court erred by failing to change the venue for his trial based on pretrial publicity. Maine Rule of Criminal Procedure 21(a)(1) requires that a trial be held in the county in which the crime was committed, "except as otherwise provided by law," but allows the defendant to move for a change of venue if "there exists in the county . . . where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial," M.R. Crim. P. 21(b)(1).[4] When the matter is heard by a jury, Rule 21 further requires that "[t]he motion may be made only before the jury is impaneled." M.R. Crim. P. 21(b)(1). Although Black did move for a change of

---

[3] In November of 2012, Black appealed to us from the court's denial of his motion to dismiss the charges and to suppress evidence of his privileged medical records. *State v. Black*, 2014 ME 55, 90 A.3d 448. We dismissed the appeal as interlocutory. *Id.* ¶¶ 1, 11. Black does not challenge the disposition of his motion to dismiss and to suppress in this second appeal.

Black also filed a sentence review application, which the Sentence Review Panel denied on December 12, 2014. *See State v. Black*, No. SRP-14-425 (Me. Sent. Rev. Panel Dec. 12, 2014).

[4] The Maine Rules of Unified Criminal Procedure were not in effect in Knox County when the trial occurred. M.R.U. Crim. P. 1(e)(2) (effective Apr. 1, 2015).

6

venue before the jury was impaneled, the court deferred ruling on that motion and Black agrees that the court's later impaneling of a jury mooted that motion. Because Black did not renew his motion for change of venue at any point in the proceedings, we review the court's refusal to change the trial venue only for obvious error. *See* M.R. Crim. P. 52(b); *State v. Perkins*, 2014 ME 159, ¶ 9, 107 A.3d 636; *cf. State v. Cochran*, 2000 ME 78, ¶ 19, 749 A.2d 1274 (involving the renewal of a motion for change of venue after the jury was selected).

[¶11] Pursuant to Rule 21, we have recognized two circumstances in which due process requires a change of venue based on pretrial publicity. *State v. Saucier*, 2001 ME 107, ¶ 14, 776 A.2d 621. First are instances of presumed prejudice, in which the publicity "has the immediacy, the intensity, or the invidiousness sufficient to arouse general ill will and vindictiveness against the accused at the time of jury selection." *Id*. ¶ 15 (quotation marks omitted). In those cases, the nature and extent of the publicity "so taints the atmosphere of the trial [that] we will presume that an impartial jury in that location is not possible." *Id*. Second are circumstances of actual prejudice, in which an impartial jury could not be selected. *Id*. ¶ 20. "The focus in determining actual prejudice is the impartiality of the available panel members, and not whether jurors are totally ignorant of the facts and issues involved." *Id*. (citation omitted) (quotation marks omitted). In

either instance, it is the defendant's burden to establish the existence of prejudice from pretrial publicity sufficient to change venue. *Id*. ¶¶ 15, 21.

[¶12] In this matter, there is no dispute that the court was in fact able to impanel an impartial jury. At the conclusion of jury selection, Black agreed that he was satisfied with the panel chosen, and concedes in this appeal that "the Court properly screened the jury pool during the selection process." Black contends, however, that there was pretrial publicity to such an extent that prejudice nevertheless must be presumed. In summary, Black encourages us to conclude that there was presumed prejudice although he concedes there was no actual prejudice and a jury was impaneled to his satisfaction. We decline to do so.

[¶13] The court—with substantial input from Black's attorney as well as the prosecutor—individually questioned every member of the jury pool who indicated that he or she had seen any media coverage of the case, and it excused those few who, having already formed opinions on the case, acknowledged that they could not be fair or impartial. *See id.* ¶ 21 (affirming the denial of a motion for change of venue when the court conducted an individual voir dire of all potential jurors who had been exposed to pretrial publicity and excused those who stated that they could not be impartial); *State v. Chesnel*, 1999 ME 120, ¶¶ 8-9, 734 A.2d 1131 (discerning no abuse of discretion in denying a change of venue when the trial court extensively questioned the jurors about their knowledge of the case and gave

8

the defense the opportunity to suggest additional questions). A change of venue is meant to address instances in which a fair and impartial jury cannot be selected, thereby denying the defendant a fair trial in that particular location. *See State v. Cooper*, 617 A.2d 1011, 1014 (Me. 1992). Here, the claimed need for a change of venue was obviated by the court's selection of an impartial jury through a process Black does not challenge. *See Saucier*, 2001 ME 107, ¶ 21, 776 A.2d 621 ("The court was, in fact, able to select an impartial jury . . . .").

[¶14] Even if Black had not agreed to the actual jury impaneled in his case, however, we would disagree with Black's contention that there was pretrial publicity to such an extent that prejudice nevertheless would be presumed.[5] Eleven of the twelve articles Black produced focused on his and Zahn's rescues, the police investigation, his arrest, his bail conditions, the indictment, and the trial schedule. One additional article discussed Black's possible motives. None of the articles posited that Black was guilty, and the articles contained summaries of both Black's and Zahn's statements to police. Although the trial was not held until 2014, six of the articles were from April of 2011, three from May of 2011, one from July of 2011, one from November of 2011, and one from March of 2012. Thus, even the

---

[5] We are limited in our review of the pretrial publicity to those materials Black produced in support of his motion for change of venue. *See State v. Cooper*, 617 A.2d 1011, 1014 (Me. 1992) (noting that it is the movant's "affirmative obligation to provide an adequate record" from which the court can evaluate the publicity and its impact on the jury).

latest article produced was published more than two years before Black's trial, and most were published more than three years before Black's trial. Black did not provide any evidence of more recent media coverage. *See id.* ¶ 17 (affirming the denial of a motion for change of venue when the articles presented were "straight forward accounts of the tragedy and appeared nine months before trial"); *Cochran*, 2000 ME 78, ¶¶ 23-24, 749 A.2d 1274 (upholding the denial of a change of venue when the news articles submitted were several months old and therefore lacked immediacy, and when most involved factual reporting of the court's procedural events); *Chesnel*, 1999 ME 120, ¶ 7, 734 A.2d 1131 (concluding that no error existed in the denial of a change of venue where the newspaper articles were published several months before jury selection and "did not call for specific action or express opinions as to guilt"). There was no basis for the court to find, absent an inability to draw a fair jury, that Black could not receive a fair trial in that venue.

[¶15] Black also challenges the sufficiency of the evidence supporting his conviction as to each of the six counts. Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence on which a jury rationally could find, beyond a reasonable doubt, that Black committed each element of each of the crimes of which he was convicted. *See* 17-A M.R.S. §§ 2(5), (9)(A), (23), 152(1)(A), 201(1)(A), 208-B(1)(A), (B) (2015); 17-A M.R.S.

§ 208(1); *Graham*, 2015 ME 35, ¶ 27, 113 A.3d 1102; *State v. Troy*, 2014 ME 9, ¶ 10, 86 A.3d 591. Zahn's testimony alone satisfied each of the elements of proof. *See State v. Graham*, 2010 ME 60, ¶ 9, 998 A.2d 339 ("[T]he victim's testimony alone was sufficient . . . ."); *see also State v. Woodard*, 2013 ME 36, ¶ 19, 68 A.3d 1250 (stating that the jury is permitted to draw all reasonable inferences from the evidence, and may infer the defendant's intent from the evidence). Her version of events was corroborated by the injuries she suffered, and by the evidence that her blood was found on the rocks at the top of the cliff and on Black's clothing and shoes. In addition, her testimony that Black hit her with a rock before pushing her off the cliff was consistent with the statements she had made to multiple witnesses at various times, including the strangers who stopped to help her, the paramedics who treated her at the scene, the fire chief who responded to the scene, and two treating physicians. That Black himself was also seriously injured in the incident, whether Black stood to gain Zahn's inheritance if she died, and the existence of other contradictory evidence are of no moment because the weight and credibility of the evidence was for the jury's determination. *See Graham*, 2015 ME 35, ¶ 28, 113 A.3d 1102.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Steven C. Peterson, Esq., West Rockport, for appellant Charles R. Black

Christopher Fernald, Asst. Dist. Atty., Prosecutorial District Six, Rockland, for appellee State of Maine

Knox Superior Court docket number CR-2011-105
FOR CLERK REFERENCE ONLY